Good morning, your honors. Kevin Smith for William Cossart, the appellant in this matter. I'd like to request that I be able to reserve two minutes for rebuttal. This is a case that started in the Middlesex Superior Court when my client, who was employed by United Excel, was denied compensation that he alleged he earned on a commission basis based on some work he was doing for his employer, United Excel, which is based in Kansas. The district court allowed a motion to dismiss on personal jurisdiction basis without a hearing, so we're here on a de novo review. What's important about the facts of this case, and we can go through all the language that this court and other courts have written in cases about fairness and international shoe and all the cases that have followed that. What's different about this case, what's important about this case, is that the basis for the claim made by my client was his rights under Chapter 148-149, and those rights, which in Massachusetts, in my experience, Massachusetts is very strong in protecting the employee's rights to compensation. That statute gives rise to not only a right to sue your employer if he either delays or denies your compensation, but it gives you a right to collect attorney's fees and also to have multiple damages awarded. That was the basis for this claim. And the facts are very important in considering whether the contacts that this foreign corporation had with Massachusetts are sufficient to justify personal jurisdiction. And I think the stark difference between the way my client has argued his case on personal jurisdiction versus UnitedXL is that my client was a business development consultant in the design build space for healthcare facilities. He previously had developed an expertise in a large client base or contact base while he was the Vice President of Northeast Hospital Sales for another company. UnitedXL, the defendant in this case, came to Massachusetts, solicited him to be their new employee to do just what he did at the other company and to develop business in the Northeast where they weren't doing any business at all or very little business. They came to Massachusetts because they wanted him. This is not a case in which there was just an incidental contact or a fortuitous contact with Massachusetts as has been suggested in the briefs below and in the briefs before this court. They came to Massachusetts for this person and they asked him to work for them, help grow their business here in Massachusetts, New England, and all over the country. What's important about that action by UnitedXL is that by coming into Massachusetts, offering him a compensation plan, essentially an employment agreement that did not have a jurisdictional component to it. It didn't say this agreement will be governed by the laws of Kansas or any other place. It's just an agreement that says if you are able to secure a certain work for us, you'll be entitled to a commission. It's our position that that contract is imbued with the protections of Chapter 149. And those protections say that if you are not paid compensation that you have earned, you have a right to bring a claim under Chapter 149. This case is different than the cases, many of the cases cited both by my client and by UnitedXL in that we're talking about an employment situation where a foreign corporation comes into Massachusetts, hires somebody here in Massachusetts, and encourages them to solicit business in Massachusetts. He initially was a salaried employee and then his status changed to a commission-based employee. Does the analysis change based upon the new status of his position? It does not, Your Honor. Just for the record, his initial compensation plan had a salary component plus a commission component. His change in status two years in became a commission-only position. The reasons for that, the economy was in maybe as bad a position as it had ever been since the 1930s. Money was tight and he went to this commission-based compensation plan. But the analysis is not different as to the rights he enjoys under the Massachusetts wage statute or the obligations that the employer has to pay him for wages that he has earned. So the commission piece of it is not relevant. The issue is whether he's going to sue for it here or sue for it there. This is only about minimum context, not about whatever his substantive employment rights are under mass law. I would respectfully disagree. I think the court has to look... I'm sorry, what? I'll tell you why. His claim for lost wages arises out of this Massachusetts statute. And yes, we have to look at the minimum context with the forum state in order to determine whether it's fair for him to be sued here. But they have come here and they have employed him and they've authorized him to stay in Massachusetts to work for Massachusetts. And therefore, that employer becomes, is our position, subject to the laws, the employment laws of Massachusetts. And so the minimum context has to be evaluated in the context of the claim itself. And I think that's what distinguishes this case from the cases that are cited by UnitedXL. His rights are arising out of the fact that he is here in Massachusetts and that his employer, we would argue, is obligated to provide him with the rights that the Massachusetts wage statute is designed to protect. Is there evidence for the commission portion of the agreement, the second one when he became commission only, that they were retaining him to the commissions to grow commissions in the Massachusetts area? Yes, there's evidence in the record that the affidavit of Mr. Cozart, which was submitted in opposition to the motion to dismiss, states that he was directed by his supervisors at UnitedXL to try to develop business in Massachusetts. And in fact, with respect to the commission, when they re-opted just for the commission only, I know there's that evidence with respect to when they first retained him to be an employee. But then the economy goes down, they change the nature of the employment relationship. He's now a commission only employee. And what I'm wondering is, with respect to that second one, was there any evidence that the reason they wanted to retain him was to get commissions in Massachusetts in particular, or were they just looking for commissions from anywhere? There's no evidence that it was just from Massachusetts in particular when the compensation plan changed. His job responsibilities and his obligations to UnitedXL didn't change from the beginning to the end. He was charged with trying to generate business here in Massachusetts and in other places, based on the contacts that he had originally developed while he worked for the previous employer, and also the contacts that he had maintained since that time. So I'm out of time, but I just would ask the court to focus on the fact that his claim is arising out of these very important protections that the Massachusetts wage statute provides him, protections that he doesn't get under the Kansas statute, employment statute, at least in my reading of the statute. So that's the distinction I'd ask the court to focus on. Good morning, Your Honors. May it please the court, Marissa DeLinks on behalf of UnitedXL Corporation and Kai Hornbaker. I want to begin by just pointing out that a couple of misstatements that were just made by Attorney Smith. He indicated that UnitedXL came to Massachusetts, implying that UnitedXL actually flew in here to Massachusetts to recruit Mr. Cossart. That is not the case at all. The record actually shows in Mr. Cossart's affidavit at page 128 of the record. Let's assume they reached out. He was living in Massachusetts. They reached out to him. That's right, by telephone. So they didn't fly here, but then they go to the Secretary of State for Massachusetts and say, we're going to do business in Massachusetts. In fact, we're going to open a general contracting sales office, and they file with the Secretary of State a statement, registration to do business, and the business is described as a general contracting sales office. And then they reach out to a Massachusetts resident and arrange to set up a room in his house as an office, outfitting him with the electronic equipment you need to run a sales office, and they pay him to run that general contracting sales office in Massachusetts. That sounds to me like a lot of contacts with Massachusetts that directly relate to the employee who's running the Massachusetts sales office. And as an agent of your client, he in fact attempted to solicit business throughout New England. He did that of his own accord, and I think that is an important distinction as well. What is in the record actually is that, and again, that's in Mr. Cossart's own affidavit, is that he believed that UEC wanted him to focus attention in the Northeast. He doesn't say that he was directed by anyone to develop business for UEC directly in Massachusetts. And in fact, UnitedExcel's affidavit indicates that he was directed to develop business nationally, and that his efforts in Massachusetts were very insignificant compared to his efforts elsewhere. Nationally would include Massachusetts? Yes, it does, but here's the problem. We have to look at whether this particular case, contrary to what Attorney Smith says, as Your Honor indicated, does this case allow for personal jurisdiction of UnitedExcel based on the Massachusetts long-arm statute, and does it comply with the constitutional due process? Aren't the two the same? Haven't we already said that that statute reaches to the full extent that the 14th Amendment allows? I'm sorry? Isn't it coextensive, the Massachusetts long-arm with the 14th Amendment? It is, but one of the things that has to be found here, and I'm not disagreeing with Your Honor at all, but you have to find that this WAJAC claim arises from their contacts. And the problem is that the WAJAC claim that is alleged is that the decision was not to go forward on a California project because, and to frustrate the purpose of that was all going to be done in California, but not to go forward on that project. Is it the WAJAC claim that the payment of the Massachusetts employee who was running the Massachusetts sales office in Massachusetts was not in accord with the Massachusetts statute? Well, my argument to the Court is that it is not, and I have to say that I need to correct Your Honor to indicate that in this record he was not opening, he didn't open a Massachusetts sales office. He merely made telephone calls and e-mails nationally for UnitedXL from his home. Who opened the Massachusetts sales office? Your client told the Massachusetts Secretary of State that they were opening in Massachusetts. There was no Massachusetts sales office, and that's in the record. What the record also indicates is UnitedXL, they registered to do business because they agreed to employ Mr. Cossart here in Massachusetts. That's why they opened it. They've never generated any revenue in Massachusetts based on Mr. Cossart's activities for them in the four years. Why isn't that enough? Why isn't it enough that they've never generated revenue? No, that they've hired him as their employee in Massachusetts knowing he's in Massachusetts. It's not like a passive purchaser. It's not somebody just bought online a pack of cards or something. This is an ongoing, intended to be ongoing, services contract for personal services with a person they know is in Massachusetts. And it's hardly news to them. They not only filed, as Jessica said, they went to significant steps to make sure he would be functional for them as an employee in Massachusetts. Okay, and in those two years when they did register for business for those reasons, Mr. Cossart developed no business for them. And thereafter, what the record shows is they had registered to do business because of a subcontract. He was an unsuccessful employee. He was still an employee. But he was still doing business as their agent. Whether he was good at it or not is irrelevant for purposes of our analysis. Okay, but what we do need to do, and I don't want to run out of time, is not just focus on the Massachusetts long arm statute, but then let's look to the due process analysis. Because I think there's a specific problem there, too. The Downer case that we decided not that long ago was a personal services situation with a Canadian corporation. And they hired actors in Massachusetts. No physical contacts, just lots of phone calls. The claim there was that they weren't successful. They never consummated the deal. That led to a suit. We said that due process concluded that under due process there were enough contacts. How is this different? I'm not familiar with the case, I'm sorry, Your Honor. It's not something that I briefed and included in my record, so I would have to get back to you as to why that case is different than this one. But I do know what is in this record. And I know that you've got a situation with a Kansas corporation that has no contacts with Massachusetts outside of Mr. Cousart. But that's the point. I don't believe that it is, because I don't believe the Wage Act claim arises from those contacts. But if you were right, then a company in Ghana could hire all of its contracting sales force in 50 states in the United States, and they would then go call on countries outside the United States, and we would have to conclude there's no jurisdiction in any state in the country. Under your analysis. It seems to me that the better analysis is that if you go to a state and hire an employee in that state to perform work from that state for you, if you're going to have a dispute with that employee over the terms of that engagement, why isn't that adjudicated in that state? I think, again, because it depends, you have to look at that through the prism of what the claim is. And this claim as a Wage Act claim relates solely to this corporation's decision not to pay him, which was done in Kansas. And that's why it doesn't relate. He's in his basis for arguing to your honors today is that I need to be here because the law is better for me here. So if Boeing decides in Chicago not to pay its 20,000 workers on the West Coast, that they can't sue on the West Coast? It depends on what the claim is. They've made the decision in Chicago. So they make a decision in Chicago not to pay the employees in California. Then they can maybe, well, here's the deal. Whether they can pursue the claim in California obviously would relate. I would say it depends on the context that IBM has, the business that they're doing here in Massachusetts. IBM is a very different company than UnitedXcel that's based in Kansas that has no business here in Massachusetts. None whatsoever. So it's a very different analysis, your honor, to say IBM, huge corporate entity versus this particular Kansas corporation. Could you say a little bit about what the claim, what is significant about this claim that makes you think it's unconnected to the work he did in Massachusetts? Yes, of course, because this claim is about a California contract that never went forward. And the decision, what is alleged here is UEC did not go forward with the contract because they didn't want to pay him the commission. What's in the record is that's not what happened. It was a commercially unviable contract because the project was very low, a low dollar amount compared to other projects. They had to pay him this commission and the owner of the hospital was making all kinds of demands they couldn't meet. That's what's in the record. But he's going to dispute that. And that may be. But won't part of the dispute then turn on how much work he actually did and the nature of his engagement with your company, which would take it back to being connected to Massachusetts, no? No, because it's really just about are they liable under the Massachusetts, no other claim here. He just claims you're required to pay me under the Massachusetts Wage Act because that's federal law for me. I want attorney's fees and I want multiple damages. He can still make that argument in Kansas. He can still try and require Massachusetts law to apply there. We're going to try to do it here. If we're stuck here, we're going to try and say Kansas law applies. The question for this court is, is there sufficient context by UEC and this jurisdiction that gives rise to this claim? Suppose they've hired him for $20 an hour. And then they decided in Kansas when it came time to write the check, they're only going to pay him $2 an hour and send him a check for $2 instead of $20. And he says that's a violation of the Massachusetts minimum wage statute. And you breached my contract with me. Wouldn't we expect that case to be brought in Massachusetts? Your Honor, I understand you want me to concede something and I can't concede my case for my client. I can't, I'm sorry. I'm not looking for confession counsel. I want to know what the difference is between my hypothetical and this case. Could you tell me about that corporation? Because that's what the difference is. What are those contacts? My client, I would tell you the same case. No, because it doesn't give rise to, they don't have sufficient context here that gives rise to that claim. That's my position and I appreciate the court's attention and indulgence this morning. Just two quick points. The argument by counsel, which is made quite clear in the briefs and which has been argued here today, is that everything that Cosart did was of his own accord. As if he was giving carte blanche and that UEC could care less what he did or where he went. I think that is not an argument that is credible based on what this corporation, decided to do when it hired Cosart. Yes, he was an expert in his field and they asked him to employ that expertise in Massachusetts and everywhere else in the country and he did it. Did he have some discretion on where he could go? Certainly. He was a professional and he was good at it, but they told him to come here. They wanted to expand their business here. That is in the record. So all that he did wasn't of his own accord, it was for the benefit of his employer. He did exactly what they asked him to do. And I think the point, it's an important point, particularly in this day and age. That sounds like a general jurisdiction point rather than a specific jurisdiction point. And I understand the general jurisdiction point. If one were not convinced that the general jurisdiction point carried over to the commission relationship that followed on, that particular point that they hired him to do business in Massachusetts isn't particularly powerful with respect to a claim about business he did in California. So just on the specific jurisdiction point with respect to what he did in California. That was my second point. I think that, and it also goes to the point that Judge Kayada was driving at, when you come to Massachusetts and you hire somebody and your contract isn't specific as to what law governs, it's our position that the law of Massachusetts governs. And when you violate a statute in Massachusetts for payment of wages, that is a violation that occurs in Massachusetts. And whether it involved a California contract or a Texas contract or any other contract is of less importance, and I would argue maybe no importance to the rights that that employer, UnitedXL, owes to my client to pay him wages for work that he did as their employee in Massachusetts. I don't think where the contract may have been, in this case California, is important to that analysis. It's a Massachusetts contract, as far as we're concerned, to be interpreted in accordance with the Massachusetts Wage Act. And so under the specific jurisdiction analysis, I think that's the way I would argue that.